## Franz Sartison, Adm'r, v. The Baltimore & Ohio S. W. R. R. Co.

1. CONSOLIDATION—*Reorganization—One Railroad Bought by Another—Parties.*—Where one railroad procures, by purchase, the property and franchises of other roads, and then by deed transfers all its property to another company, the last company is not a reorganization of the old company, and there is no consolidation which will warrant the substitution of the new company as party defendant in a suit originally brought against the old company.

Action on the Case.—Error to the Circuit Court of St. Clair County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1902. Affirmed. Opinion filed September 11, 1902.

Statement.—This is an action on the case brought by plaintiff in error against defendant in error, to recover damages on account of the death of John Schneider, deceased, which plaintiff in error claims was caused by the negligence of Judson Harmon and Joseph Robinson, their agents and servants, while they, the said Harmon and Robinson, were receivers of the Baltimore & Ohio Southwestern Railway Company, duly appointed by the Circuit Court of the United States for the Southern District of Illinois.

The case was tried on a second amended declaration, which, as abstracted, is as follows:

"Franz Sartison, administrator of the estate of John Schneider, deceased, plaintiff in this suit, complains of the Baltimore & Ohio Southwestern Railroad Company (a corporation), defendant in this suit, of a plea of trespass on the case.

For that, whereas, the Baltimore & Ohio Southwestern Railway Company, a corporation, on, to wit, the first day of January, 1890, and from thence up to and until the first day of August, 1899, was the owner of a certain railroad extending through the country aforesaid, its railroad track leading from the city of East St. Louis eastwardly to and through the town of O'Fallon, to and through the city of Lebanon, to Trenton, in Clinton county, State aforesaid, and further.

That during all of the time said railroad track was owned as aforesaid, said last mentioned corporation owned a certain side railroad track at Lebanon aforesaid, located, to wit, fifteen feet away from said first mentioned railroad track, running parallel with said first mentioned railroad track, and extending, to wit, one mile in length.

That before, and on the first day of January, 1890, and from thence hitherto, said railroad track, and said side railroad track in said city of Lebanon, crossed a certain public highway, its location being north and south, used for the travel of pedestrians, vehicles, teams and the like, which said highway has been in existence for the last past twenty years, and that the traffic on said highway is very frequent, extensive and great.

Plaintiff further avers that while said last mentioned corporation was such owner, and in possession of said railroad track and railroad side track, on, to wit, the first day of January, 1898, by the United States Circuit Court for the Southern District of Illinois, Judson Harmon and Joseph Robinson were duly appointed receivers of said last mentioned corporation, and from thence until, to wit, August 1, 1899, said Harmon and Robinson, as such receivers, operated said railroad, daily running locomotive engines and cars on the same from said East St. Louis to O'Fallon, Lebanon, Trenton, and further, and return; also leaving railroad freight cars, as many as, to wit, fifty at a time, placed standing on said side railroad track.

Plaintiff further avers that said receivers by their agents and servants operated said railroad as aforesaid, from, to wit, the last day of January, 1898, until, to wit, the 1st day of August, 1899, during all of which time said receivers received all the earnings and income from the use of said railroad, amounting to a large sum of money, to wit, twenty million ($20,000,000) dollars, made lasting and valuable improvements on said railroad premises, as well as purchased large tracts of land for the use, and used by said receivers, and turned over to said last named corporation, being of great value, to wit, one hundred thousand ($100,000) dollars.

Plaintiff further avers that while said Harmon and Robinson were in possession, by their agents and servants operating said railroad, on, to wit, the 6th day of May, 1899, and during all of that day, on said side railroad track, said receivers, by their agents and servants, left standing, to wit, fifty freight box cars coupled together, so that the

Sartison v. B. & O. S. W. R. R. Co.

first car west was standing within, to wit, fifteen feet from the east side of said public highway where said railroad track and side railroad track cross said public highway at Lebanon as aforesaid.

Plaintiff further avers that said receivers, by their said agents and servants, on the 6th day of May, 1899, by leaving said freight cars on said side railroad track crossing, obstructed the view of persons traveling upon said highway within a mile from where said tracks cross the same, and by the obstruction aforesaid made said crossing a dangerous one to persons driving teams and vehicles upon and over the same.

Plaintiff further avers that while said freight cars were so left on said side track, it became and was the duty of said receivers, by their agents and servants operating and in charge of the locomotive engines and train of cars attached thereto, on the approach to said crossing to move locomotive and train slowly and with care, and at a distance of eighty rods from said crossing commence ringing the bell or blowing the whistle, and continue to ring the bell or blow the whistle until said crossing was reached.

Plaintiff further avers that on said 6th day of May, 1899, said receivers, by their agents and servants, were operating said railroad, moving and running a locomotive engine and train of cars attached thereto at a great speed, to wit, at the rate of sixty miles per hour, without blowing a whistle or sounding a bell at any time within eighty rods just east of said crossing.

Plaintiff further avers that on the 6th day of May, 1899, John Schneider was lawfully and rightfully traveling, to wit, riding in a cart drawn by a mule upon and along said public highway at the crossing aforesaid, and while on said crossing, the locomotive engine drawing a train of cars attached thereto coming from the east, in charge of the agents and servants aforesaid, running on the main track at the rate of speed aforesaid on said crossing, with great force and violence struck said cart and mule, thereby throwing said Schneider out of said cart and upon the ground, whereby and in consequence of said throw and fall said Schneider was then and there killed.

Plaintiff further avers that when about one mile distant from said crossing, and all the time thereafter continuously while driving toward the said railroad crossing, and while said Schneider drove to and upon said crossing, he used due care and caution in watching said railroad track and its

crossing aforesaid, and listened for the purpose of ascertaining whether a locomotive engine and cars attached thereto operated on said main railroad track was coming from the east toward said crossing, but no locomotive and cars attached thereto was seen by said Schneider, nor was any bell rang or whistle blown as required as aforesaid.

Plaintiff further avers that on, to wit, August 1, 1899, said Harmon and Robinson as such receivers, by said United States Court were discharged from their duties as such receivers.

That thereupon, to wit, on the day and year last aforesaid, last mentioned corporation was reorganized and incorporated by the name and style of The Baltimore & Ohio Southwestern Railroad Company and then and there said railroad property, together with all its side tracks, appurtenances, real estate and personal property, including the improvements as aforesaid, were sold, transferred and turned over to the defendant herein; said sale and transfer as aforesaid were made August 1, 1899, subject to the claims and demand that existed and had been incurred by said receivers in operating and controlling said railroad, of which the defendant had notice, and purchased accordingly, and ever since said defendant has been and still is the owner in possession and is operating said railroad, and is moving and running locomotive engines and cars attached thereto on said track, taking and receiving the earnings of said road for its own use."

To the declaration defendant filed a plea of not guilty, on which issue was taken, and the case was tried by a jury, which, at the close of plaintiff's evidence the court, on motion of the defendant, instructed to return a verdict for the defendant, and this being done, the plaintiff excepted to the ruling of the court in giving the instruction, and filed his motion for a new trial, for the following reasons:

"First.  The court improperly gave to the jury the first instruction asked by the defendant.

Second.  The verdict is contrary to the law and evidence in the case.

Third.  Newly discovered evidence to the effect that the defendant, Baltimore & Ohio Southwestern Railroad Company, is a reorganization of the Baltimore & Ohio Southwestern Railway Company."

After the jury had returned their verdict, and on the

hearing of the motion for a new trial, plaintiff's counsel produced and read to the court a document as follows:

"In the Circuit Court of the United States,
for the Southern District of Illinois,
Thursday, February 21st, A. D. 1901.
Present—Hon. William H. Seaman, District Judge.

| | |
|---|---|
| Farmers' Loan and Trust Company and W. H. H. Miller,<br>vs.<br>Baltimore & Ohio Southwestern Railway Company and the Mercantile Trust Company. | In Chancery.<br>Consolidated Cause. |

Upon motion of the Baltimore & Ohio Southwestern Railroad Company, the assignee of the purchasers in the above entitled cause, and it appearing to the court that Judson Harmon and Joseph Robinson, receivers heretofore appointed, have in compliance with the former orders of the court made in this cause, turned over and delivered to the said Baltimore & Ohio Southwestern Railroad Company all property of every sort, nature and description, which came to their hands by virtue of their appointment as receivers as aforesaid, and that the said Baltimore & Ohio Southwestern Railroad Company has assumed all the contracts and liabilities of said receivers, and that no reason exists for continuing said receivership, it is therefore ordered by and with the consent of said Judson Harmon and Joseph Robinson as receivers, that the said Judson Harmon and Joseph Robinson be and hereby are discharged as receivers, provided that all suits and proceedings heretofore begun against the said receivers, and in which service has been made upon said receivers, and which may have begun by intervening petition in this cause, shall be continued in the name of said receivers, and the said The Baltimore & Ohio Southwestern Railroad Company is hereby authorized to appear in and defend said causes, if it shall deem proper, and to use the names of said receivers in the defense thereof.

Circuit Court of the United States, } ss.
    Southern District of Illinois.

I, James T. Jones, clerk of the Circuit Court of the United States, in and for the Southern District of Illinois, do hereby certify that the foregoing is a true copy of an order of court entered February 21, 1901, discharging the receivers, in a certain cause wherein the Farmers' Loan and Trust

Company and W. H. H. Miller are complainants and the Baltimore & Ohio Southwestern Railway Company and the Mercantile Trust Company are defendants, as truly as the same appears of record in my office.

In testimony whereof, I hereunto subscribe my name and affix the seal of said court, at Springfield, in said district, this 14th day of June, in the year of our Lord one thousand nine hundred and one.

[SEAL.]                                    JAMES T. JONES, Clerk."

R. H. HORNER and WINKELMANN & BAER, attorneys for plaintiff in error.

KRAMER, CREIGHTON & SHAEFFER, attorneys for defendant in error; EDWARD BARTON, of counsel.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

Of the four errors assigned we deem it necessary to consider but one—the giving of the instruction to the jury to find a verdict for the defendant.

It is said by counsel for plaintiff in error, in their statement of the case, that this suit was originally brought by plaintiff in error against Harmon and Robinson, the receivers of the Baltimore & Ohio Southwestern Railway Company, as well as against that company, before the receivers were discharged, and that the plaintiff afterward dismissed his case against the receivers and the railway company, and plaintiff, on his own motion, substituted the present defendant in place of the original defendants.

A contention of counsel for defendant in error is, that the deceased, at the time he was killed, was not exercising ordinary care for his own safety. Whether he was or not we deem it unnecessary to determine.

The only evidence offered in the case was introduced by the plaintiff; the defendant offered none. The evidence shows that the Baltimore & Ohio Southwestern Railway Company was made up of several different lines of road in this State, which several lines had been mortgaged separately. These mortgages having fallen due and remaining

unpaid, proceedings were begun by the several holders of the mortgage indebtedness, in the Circuit Court of the United States for the Southern District of Illinois, to foreclose the mortgages, and such proceedings were had in the cases, which were consolidated together, that on or about the 27th of May, 1899, a decree of foreclosure of the several mortgages was made and entered by the court, and the court appointed a special master commissioner to sell the railroad, its property and franchises at public vendue, in case default was made in the payment of the several sums of money found due by the court, within the short day fixed by the court; and the amounts found due and remaining unpaid, the special master commissioner, after having duly advertised the entire property and franchises for sale, on the 10th of July, 1899, sold it to Edward R. Bacon, George Hoadly, and J. Chauncey Hoffman, for the sum of $3,510,000, and a certificate of purchase of the entire property and franchises of the Baltimore & Ohio Southwestern Railway Company situated in this State, was executed by the special master commissioner to Bacon, Hoadly and Hoffman, as provided by the decree of the court. The decree contained among others, two clauses, as follows :

" The said master commissioner shall offer the property for sale, subject to the payment by the purchaser in each case of the portion of any indebtedness incurred by the receivers herein, and their fees properly chargeable against the property purchased, and such other claims as the court has heretofore or may hereafter order or decree to be prior or superior to the lien of the said mortgages or either of them on said property or any part thereof."

" That within thirty days from the confirmation of said sale or sales, or such further time as the court may allow on application of the purchaser for good cause shown, the purchaser or purchasers of said property shall complete payment of the entire amount bid to the said master commissioner; and that on such payment, the said purchaser or purchasers, or his or their assigns, shall be entitled to receive a deed or deeds of conveyance thereof from the said master commissioner, and from the other parties to this cause as herein provided, and to receive possession of the property so purchased from the parties holding possession

of the same, subject, however, to the payment of the portion
of any indebtedness incurred by the receivers, and their fees
properly chargeable to the property so purchased, and of
such other claims as the court heretofore or may hereafter
order or decree prior or superior to the lien of said mort-
gages or either of them on said property or any part thereof,
and the court reserves jurisdiction over said property, not-
withstanding such deed or deeds or delivery of possession,
for the purpose of enforcing such payment."

The sale was confirmed by the court on July 21, 1899.

On the 28th of July, 1899, Bacon, Hoadly and Hoffman
assigned their certificate of purchase, issued to them by the
special master commissioner, to the St. Louis, Springfield
and Vincennes Railway Company, a corporation organized
under the laws of this state, and on the same date the special
master commissioner executed a deed of the railroad with
all of the property, rights, franchises and privileges which
were of the Baltimore & Ohio Southwestern Railway Com-
pany to the St. Louis, Springfield & Vincennes Railway
Company.

Under and by virtue of a law of this state entitled, " An
act concerning the rights, powers and duties of certain cor-
porations therein mentioned, authorizing the sale and trans-
fer of any railroad or railroad and toll-bridge, and other
property, franchises, immunities, rights, powers and privi-
leges connected therewith or in respect thereto, of any cor-
poration in this state to a corporation of another state, and
prescribing the rights, powers, duties and obligations of the
purchasing company," (Laws of Illinois, 1899, p. 116,) the
St. Louis, Springfield & Vincennes Railway Company, on
the 29th of July, 1899, sold and by deed conveyed, all the
property, franchises, rights and privileges that it had
acquired by the deed of the special master commissioner, to
the Cincinnati, Louisville & Vincennes Railway Company,
a corporation duly organized under the laws of the State of
Indiana. Immediately thereafter, upon the 1st day of
August, 1899, the Cincinnati, Portsmouth & Parkersburg
Railway Company, a corporation created and existing under
the laws of the State of Ohio, and the Cincinnati, Louisville

& Vincennes Railway Company, were duly consolidated, thus forming The Baltimore & Ohio Southwestern Railroad Company (defendant in error), and on the same date, in accordance with a decree of the court, the Baltimore & Ohio Southwestern Railway Company, deeded, by deed of quit-claim, to the Baltimore & Ohio Southwestern Railroad Company, all interest in and to the said railroad property, and the receivers surrendered and delivered the railroad, and all of its property, rights and franchises, to defendant in error.

In the face of the evidence furnished by plaintiff in error, we are unable to see how it can be claimed by his counsel that what was done was but a reorganization of the original railway company, under the name of The Baltimore & Ohio Southwestern Railroad Company, nor are we able to understand how the property, rights and franchises of the Baltimore & Ohio Southwestern Railway Company became, in a legal sense, amalgamated with the property, rights and franchises of any other railroad company. By the sale of the property, rights and franchises of the Baltimore & Ohio Southwestern Railway Company, it is true, they became the property of the purchasers, and passed to their assignees, but the purchase of a railroad, with its property and franchises, by one or more persons, is one thing, and the consolidation of the property of a railroad company and its franchises, with the property and franchises of another railroad company is another and altogether different thing.

There is a total failure of evidence tending to show that the Baltimore & Ohio Southwestern Railway Company was ever consolidated, in a legal sense, with any other railroad or railway company or companies, whatever.

Besides the contention of appellant's counsel that the suit is properly brought against the Baltimore & Ohio Southwestern Railroad Company, because this latter company, the defendant in error here, is but a reorganization of the Baltimore & Ohio Southwestern Railway Company, counsel for plaintiff in error further contend that the decree of foreclosure of the mortgages, and the sale of the property thereunder, gave plaintiff in error the right to substitute the defendant in error as a party defendant to this suit

at law, in the place of the receivers of the railway company. The Circuit Court of the United States in its decree did not undertake to clothe any creditor of the railway company with the power or right to bring suit against any purchaser or purchasers of the property and franchises of the railway company. What the court did was a direction to the master commissioner to " offer the property for sale, subject to the payment by the purchaser in each case of the portion of any indebtedness incurred by the receivers herein, and their fees properly chargeable against the property purchased, and such other claims as the court has heretofore, or may hereafter order or decree, to be prior or superior to the lien of the said mortgages, or either of them, on said property, or any part thereof."

The clear intention and meaning of the court in rendering this decree was not to open a door for litigation, over the doings of the receivers, through any court aside from itself.

Whether, when plaintiff in error dismissed the receivers out of the case and voluntarily substituted the present defendant in their stead, he did a wise thing, is not a matter before this court for consideration.

There is no allegation in the declaration that defendant in error ever promised or agreed to assume any liabilities of the Baltimore & Ohio Southwestern Railway Company, or of its receivers, although counsel for appellant incorrectly assume that it did so, and, to sustain their position, refer to the final order of the United States Court, entered February 1, A. D. 1891, discharging the receivers, when they knew that this decretal order was not offered in evidence on the trial of the case, and is no part of the evidence heard by the jury in the case, and for this court to consider it, as insisted upon by counsel, would be to consider a matter entirely foreign to the case.

There was no evidence before the jury on which a verdict for the plaintiff could have been sustained, and the court did not err in directing the jury to find a verdict for the defendant.

The judgment of the Circuit Court is affirmed.